IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COREY W. | * | |
| v. | * | Civil Case No. ELH-18-490 |
| COMMISSIONER, SOCIAL SECURITY[1] | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the Defendant's Motion for Summary Judgement and Plaintiff's Response, (ECF Nos. 18, 20), and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have reviewed the filings, and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("the SSA") if it is supported by substantial evidence, and if the SSA followed the law. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court grant Defendant's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

As background, Plaintiff filed his claim for Disability Insurance Benefits in August, 2014, alleging a disability onset date of December 1, 2010. (Tr. 154-57). His claim was denied initially and on reconsideration. (Tr. 58-70, 72-86). Plaintiff had a hearing before an Administrative Law Judge ("ALJ") on May 15, 2017, at which he appeared with a representative, Lawrence Pucci. (Tr. 28-57). Following the hearing, the ALJ issued a written opinion in which he determined that Plaintiff was not disabled within the meaning of the Social

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

Security Act during the relevant time frame. (Tr. 11-22). On December 12, 2017, the Appeals Council declined review, making the ALJ's decision the final, reviewable decision of the SSA. (Tr. 1-5). Plaintiff filed the instant suit seeking review of that decision on February 16, 2018. (ECF No. 1).

The ALJ found that Plaintiff's insured status under the Social Security Act ended on December 31, 2014. (Tr. 13). Therefore, the relevant timeframe to assess Plaintiff's claim of disability is from his alleged onset date of December 1, 2010 to December 31, 2014. *See* 42 U.S.C. §§ 423(a), (c). The ALJ found that through his date last insured, Plaintiff suffered from the severe impairments of "post concussive syndrome, degenerative disc disease of the cervical spine, and neurocognitive disorder." (Tr. 13). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he is limited to simple, unskilled tasks, with no fast pace or strict production requirements and only occasional changes in the work setting.

(Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform several jobs existing in significant numbers in the national economy, including final inspector, control worker, and inserter, and that, therefore, he was not disabled. (Tr. 20-21).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether

substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. *See* 20 C.F.R. § 404.1520. The ALJ ruled in Plaintiff's favor at step one and determined that he did not engage in substantial gainful activity during the relevant timeframe. (Tr. 13); *see* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considered the severity of each of the impairments that Plaintiff claimed prevented him from working. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Although the ALJ deemed some impairments to be non-severe, after finding several of Plaintiff's impairments to be severe, (Tr. 13), the ALJ continued with the sequential evaluation and considered, in assessing Plaintiff's RFC, the extent to which all of his mental and physical impairments limited his ability to work, (Tr. 15-20).

The Plaintiff's Response references diagnoses of fibromyalgia and chronic fatigue syndrome ("CFS"). Pl. Resp. 2. These diagnoses appear to have been first considered by Plaintiff's treating physician, Dr. Curtis Foy, in medical treatment notes on November 24, 2015. (Tr. 732). Dr. Foy included a diagnosis of fibromyalgia in Plaintiff's next appointment on December 15, 2015. (Tr. 739). At the following appointment on January 12, 2016, Dr. Foy did not make any notation of fibromyalgia or CFS. (Tr. 748-57). By the time of Plaintiff's next appointment with Dr. Foy on August 29, 2016, Dr. Foy had revised his diagnosis of fibromyalgia, and instead diagnosed Plaintiff with somatization disorder based on the results of an intervening neuropsychological examination. (Tr. 763-64). A treating physician's diagnosis is entitled to "significant weight," even if made after the relevant date for disability benefits eligibility, "if it is based on objective medical criteria." *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v.*

3

*Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)). Dr. Foy's short-lived fibromyalgia diagnosis is not entitled to significant weight because it did not purport to be based on objective findings.[2] Furthermore, considering Dr. Foy's treatment notes as a whole, they do not suggest that Dr. Foy believed the claimant suffered from fibromyalgia during the relevant timeframe. Dr. Foy mentioned CFS once in his treatment notes, (Tr. 732), but did not make a diagnosis. Therefore, the ALJ appropriately did not include fibromyalgia or CFS as impairments.

At step three, the ALJ determined that Plaintiff's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 14-15); *see* 20 C.F.R. § 404.1520(a)(4)(iii). In particular, the ALJ considered the specific requirements of Listings 1.04 (disorders of the spine), 11.18 (traumatic brain injury), and 12.02 (neurocognitive disorders). (Tr. 14-15); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04, 11.18, 12.02 (2017). The ALJ supported his conclusion that Listing 1.04 was not met, stating that, "[p]hysical examination findings were consistently normal during the period at issue, including normal gait," and citing to medical records that were further discussed later in the decision. (Tr. 14, 18). To meet Listing 1.04(A), a claimant must have a disorder of the spine, resulting in compromise of a nerve root or the spinal cord, with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

---

[2] Fibromyalgia is a notoriously difficult condition to diagnose with objective criteria. However, the SSA has issued a ruling to provide guidance on the evaluation of fibromyalgia. SSR 12-2p, 2012 WL 3104869 (S.S.A July 25, 2012). The ruling provides two sets of criteria to establish fibromyalgia based on criteria developed by the American College of Rheumatology. *Id.* at *2. The first set of criteria is distinguished by the presentation of "positive tender points" among eighteen "tender point sites" throughout the body. *Id.* at *2-3. Dr. Foy's treatment notes make no mention of examining for any tender points. The second set of criteria requires the exclusion of other disorders that could cause the same symptoms. *Id.* at *3. While Dr. Foy's treatment notes show he did try and rule out other causes for Plaintiff's symptoms, he did not address any of the alternative disorders suggested by SSR 12-2p, such as rheumatologic disorders, myofascial pain syndrome, and chronic Lyme disease, *id.* at *3 n. 7. With regards to fibromyalgia, SSR 12-2p specifically states that the ALJ "cannot rely upon the physician's diagnosis alone." *Id.* at *2.

4

accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). Here, the Plaintiff's records included an MRI in 2013 showing "no nerve root displacement . . . or cord compression," (Tr. 18), and examinations showing full muscle strength, intact sensation, full range of motion, and negative straight leg raising tests (Tr. 17-18). Listings 1.04B and 1.04C require evidence of "medically acceptable imaging" showing spinal arachnoiditis or lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04(B)-(C). The ALJ noted that the MRI results of the Plaintiff's spine were "essentially normal," (Tr. 18), with "insignificant" findings, (Tr. 19).

Listing 11.18 can be met by showing "[d]isorganization of motor function in two extremities," 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.18(A), which the ALJ correctly noted the Plaintiff did not display, (Tr. 14). The alternate criteria for Listing 11.18 require a marked limitation in one of the four areas of mental functioning which are identical to the "Paragraph B" criteria included in Listing 12.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.18(B), 12.02(B). The ALJ concluded that the Plaintiff did not have a marked limitation in any of the four areas of mental functioning, and had only a moderate limitation in the areas of understanding, remembering or applying information, and concentrating, persisting, or maintaining pace. (Tr. 14-15). A moderate limitation means that a claimant's functioning in the relevant area "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c); *see id.* § 11.00(G)(2)(a) (not defining moderate limitation, but explaining that a marked limitation "seriously limit[s] [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis in work settings."). In supporting the findings of moderate limitations in those two areas, the ALJ cited to Plaintiff's

5

treatment records, which generally showed normal attention and memory. (Tr. 15, 354, 358, 362, 366, 370, 375, 393, 461, 468, 478, 504, 527, 531, 540, 556). The ALJ also cited to Plaintiff's ability "to drive and attend to personal care without reminders." (Tr. 14). Plaintiff and his wife both testified that Plaintiff had difficulty with memory and that he would forget things his wife told him, forget that he had watched television programs, and that he would forget about food he had put in the oven. (Tr. 38, 42-43, 51-52). Plaintiff also testified that he had problems with focus and concentration because of his pain and fatigue. (Tr. 44). Dr. Deborah Matthews, a consultative psychologist, found the Plaintiff to have an impaired memory and "deficient" processing speed. (Tr. 562-63). Dr. Matthews opined that Plaintiff's limitations with memory "may likely be expected to adversely affect [his] learning pattern," but she still seemed to conclude that Plaintiff could function in a work setting, suggesting that it may be best to "emphasize right-brain hemispheric utilization" in training for a new occupation. (Tr. 563).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's determinations at step three were supported by substantial evidence.

In considering Plaintiff's RFC, the ALJ summarized Plaintiff's subjective complaints from his testimony, along with the testimony provided by his wife. (Tr. 16). The ALJ then engaged in a detailed and extensive review of Plaintiff's medical records. (Tr. 17-19). The ALJ noted that Plaintiff's testimony and complaints regarding his chronic pain throughout his body

6

were inconsistent with the mostly normal findings in his treatment records. (Tr. 17-19). Regarding the Plaintiff's reports of chronic fatigue, the ALJ noted that Plaintiff was recommended use of a CPAP machine after being diagnosed with sleep apnea, but that Plaintiff stopped using the machine. (Tr. 13, 17, 19). Plaintiff testified that he stopped using the machine because it was uncomfortable to wear while sleeping. (Tr. 37). An ALJ may use noncompliance with medical advice as a factor in determining the credibility of a claimant. *See Myers v. Comm'r of Soc. Sec. Admin.*, 456 Fed. App'x 230, 232 (4th Cir. 2011) (finding claimant's failure to use a sleep apnea machine at night could be used by ALJ as factor in assessing credibility of complaints of daytime drowsiness). Therefore, the ALJ's use of Plaintiff's noncompliance to treat his sleep apnea as a factor bearing on the credibility of his complaints of chronic fatigue was proper. The Plaintiff also disputes the ALJ's claim that he "did not pursue neuropsychological testing." (Tr. 19). While it is true that Plaintiff did undergo a neuropsychological exam on July 14, 2016, (Tr. 592), Dr. Foy repeatedly urged Plaintiff to undergo the testing as early as October 11, 2010. (Tr. 381, 383, 400, 673, 688-89 (noting on August 5, 2015 that Plaintiff "has been to see numerous specialists, with one vital exception which is an evaluation for neuropsych testing which both myself and Dr. Detrich have recommended. I have given him contact points for several places that do this, and he finds reasons not to have it done."), 752-53). Therefore, it was not an error for the ALJ to consider Plaintiff's reluctance to undergo neuropsychological testing for over five years, including the relevant time frame, as a factor in assessing Plaintiff's credibility.

Turning to the mental impairments, as previously discussed, the ALJ noted that Plaintiff's treatment records consistently showed normal attention and memory. (Tr. 15, 17-18). The ALJ acknowledged Dr. Matthews's findings that Plaintiff had "borderline range of intellectual

7

functioning," and "memory functions . . . in the impaired range." (Tr. 19). However, the ALJ assigned "little weight" to Dr. Matthews's repor0,t because she did not explain the noted discrepancies among the IQ subtest scores and did not assess the validity of the IQ test results. (Tr. 19, 562). The Fourth Circuit has held that an ALJ has discretion to question the validity of IQ test results if the examiner does not attest to the validity of the score and the score is inconsistent with the record. *Hancock v. Astrue*, 667 F.3d 470, 474-75 (4th Cir. 2012). Here, Dr. Matthews did not attest to the validity of the IQ score and, in addition to the medical treatment records already discussed, the ALJ discussed a number of Plaintiff's activities of daily living that seem inconsistent with the IQ score, including his ability to attend to personal care, prepare lunch for himself, do chores around the house, go hunting, and drive a car. (Tr. 16). The ALJ may have misinterpreted Dr. Matthews's reference to discrepancies in the subtest scores, which Dr. Matthews seems to have interpreted as "suggesting an uneven pattern of development." (Tr. 562). Nonetheless, the ALJ was justified in assigning "little weight" to Dr. Matthews's test results, given the lack of attestation to their validity and the inconsistency with the record evidence. To accommodate Plaintiff's moderate limitations in the "Paragraph B" criteria of mental functioning, the ALJ limited Plaintiff's RFC to "simple, unskilled tasks, with no fast pace or strict production requirements and only occasional changes in the work setting." (Tr. 15). Those limitations, which were included in the hypothetical questioning of the VE, (Tr. 55), are reasonably suited to accommodate the mental functioning limitations found by the ALJ.

In addition to the assessment of Dr. Matthews's report, the ALJ also assessed and made assignments of weight to the other medical opinions in the record. (Tr. 19-20). In particular, the ALJ assigned "significant weight" to a GAF score of 70 issued after an assessment by a clinician in 2008, explaining that even though the assessment was made prior to the alleged onset date, the

8

records from the pertinent time period did not contradict the score. (Tr. 19). The ALJ assigned "no weight" to a medical opinion from Dr. Kevin Tate, because Dr. Tate's opinion was inconsistent with the record and was based on treatment that occurred after the relevant time period. (Tr. 20). As already noted, a treating physician's diagnosis is entitled to "significant weight," even if it is made after the relevant date for disability benefits eligibility "if it is based on objective medical criteria." *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)). Dr. Tate noted on his assessment form that "[a]part from subjective symptoms, [Plaintiff's] labs [and] other tests have been normal," and that Plaintiff's symptoms had only "possibly" lasted since Plaintiff's alleged onset date in December, 2010. (Tr. 935). Because Dr. Tate's opinion was not based on objective criteria and was inconsistent with the record from the relevant timeframe, the ALJ's assignment of "no weight" was correct.

The ALJ assigned "great weight" to the initial physical assessment from the State agency consultant, which limited the Plaintiff to light work, and assigned only "little weigh[t]" to the physical assessment from the State agency consultant at the reconsideration level, which limited the Plaintiff to lifting fifty pounds occasionally and twenty-five pounds regularly. (Tr. 20). The ALJ gave more weight to the first physical assessment, which provided greater limitation for Plaintiff's physical abilities, because the first assessment was more consistent with Plaintiff's testimony regarding his neck pain. (Tr. 20). With regards to Plaintiff's mental capacity, the ALJ assigned "great weight" to the opinions of both State agency consultants because they were consistent with the record. (Tr. 20). In considering the entire record, and given the detailed and

ample evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, at step four, the ALJ determined that Plaintiff could not perform any past relevant work. (Tr. 20); *see* C.F.R. § 404.1520(a)(4)(iv). Plaintiff challenges the ALJ's assertion that he continued working as a truck driver after 2006. Pl. Resp. 3; (Tr. 17). Plaintiff also seeks to provide explanation for not presenting any symptoms at his DOT physical in 2010 to maintain his truck driving license. Pl. Resp. 3; (Tr. 17). Plaintiff is correct that the ALJ misstated Plaintiff's work history, and that Plaintiff's work history forms and his wife's testimony all indicate he stopped working as a truck driver after his 2006 motorcycle accident. (Tr. 46-47, 174, 187). However, the ALJ's error was harmless, because Plaintiff's alleged onset date was December 1, 2010, and because the ALJ found that Plaintiff could not perform any of his past relevant work, (Tr. 20). The ALJ's stray reference to the DOT physical does not undermine the rest of the ample evidence that substantially supports the ALJ's decision, even if the Plaintiff's explanation for his lack of complaints at the physical were to be credited.

At step five, the ALJ considered the impact of Plaintiff's age, level of education, work experience, and RFC on his ability to adjust to new work. (Tr. 20-21); *see* 20 C.F.R § 404.1520(a)(4)(v). In doing so, the ALJ cited the VE's testimony that a person with Plaintiff's RFC would be capable of performing the jobs of final inspector, control worker, or inserter. (Tr. 21). Based on the VE's testimony, the ALJ concluded that Plaintiff was capable, with his current impairments, of successfully adjusting to other jobs that exist in significant numbers in the national economy. (Tr. 21). The ALJ's reliance on the VE's testimony constitutes substantial evidence supporting the ultimate conclusion that Plaintiff was not disabled.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 18); and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: October 19, 2018 /s/
Stephanie A. Gallagher
United States Magistrate Judge